IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | No. 5:19-CR-25 |
| | § | JUDGE RWS/CMC |
| STEVEN DONOFRIO (05) | § | |

**UNITED STATES' OPPOSITION TO DEFENDANT
STEVEN DONOFRIO'S MOTION FOR JUDGMENT OF ACQUITTAL**

The United States of America, by and through the undersigned Assistant United States Attorney for the Eastern District of Texas, files this response in opposition to Defendant Steven Donofrio's Motion for Judgment of Acquittal ("Motion"). ECF No. 633. The United States' trial evidence was sufficient to overcome a Rule 29 motion, and a rational jury could have found the essential elements of Donofrio's Conspiracy to Commit Illegal Remunerations alleged offense. Thus, his Motion should be denied.

**INTRODUCTION**

During a weeks-long trial, the United States presented evidence establishing that Donofrio knowingly and willfully entered into and participated in a conspiracy to pay and receive illegal remunerations. As will be discussed in detail below, the United States presented forensic, documentary, and testimonial evidence establishing Donofrio's guilt.

Following the United States' case-in-chief, Donofrio moved for a Judgment of Acquittal under Federal Rule of Criminal Procedure 29, and, after argument, the Court denied the motion. On December 16, 2021, after the jury returned a partial verdict regarding the remaining defendants, Donofrio orally moved for a motion for reconsideration of his motion for reconsideration, and the Court denied the motion. Later that day, after the jury indicated that it

could not agree on a unanimous verdict regarding Donofrio, Donofrio moved for a mistrial. The Court granted the motion and declared a mistrial.

## ARGUMENT

The evidence presented at trial is more than sufficient for a rational trier of fact to find Donofrio guilty of Conspiracy to Commit Illegal Remunerations. As demonstrated below, a jury could have rationally concluded that Donofrio agreed to commit the crime of illegal remunerations; Donofrio knew the unlawful purpose of the agreement and joined in it willfully; and that at least one of the conspirators during the existence of the conspiracy knowingly committed at least one overt act to accomplish some object or purpose of the conspiracy. The jury carefully considered the evidence presented over weeks of trial, deliberated for days, made credibility choices, and resolved competing interpretations of evidence. Although the jury could not reach a unanimous verdict, it is clear that members of the jury interpreted the evidence and were convinced that Donofrio was guilty beyond a reasonable doubt.

### A. Standard of Review

The legal standard applicable to a Rule 29 motion for judgment of acquittal has been described as the "rational jury standard." *United States v. Thomas*, 12 F.3d 1350, 1373 (5th Cir. 1994). When evaluating a Rule 29 motion, "the 'relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Valle*, 538 F.3d 341, 344 (5th Cir. 2008) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). A defendant bears a heavy burden in meeting this high standard. *United States v. Achobe*, 560 F.3d 259, 263 (5th Cir. 2008) ("The standard for a sufficiency claim is high."). The court must give "the government the benefit of all reasonable inferences and credibility choices." *United States v.*

*Carter*, 953 F.2d 1449, 1456 (5th Cir. 1992).  Thus, a court cannot grant a judgment of acquittal unless it concludes, after viewing the evidence through the lens of this deferential standard, that a rational jury would necessarily have had to entertain a reasonable doubt as to the defendant's guilt.  *See United States v. Burns*, 597 F.2d 939, 941 (5th Cir. 1979).

Of course, the court considers all relevant evidence, direct or circumstantial.  *See United States v. Loe*, 262 F.3d 427, 432 (5th Cir. 2001).  "The standard does not require that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt." *Id.* (internal citation omitted).  "A jury is free to choose among reasonable constructions of the evidence ... and it retains the sole authority to weigh any conflicting evidence and to evaluate the credibility of the witnesses." *Id.*  Indeed, in evaluating a motion for judgment of acquittal, "[i]t is not for the court ... to weigh evidence or assess the credibility of witnesses." *Deville*, 278 F.3d at 506 (internal citation omitted).

### B. Conspiracy to Commit Illegal Remunerations

Count One of the First Superseding Indictment charged Donofrio with Conspiracy to Commit Illegal Remunerations, in violation of 18 U.S.C. § 371.  To convict Donofrio of this offense, the United States had to prove each of the following elements beyond a reasonable doubt:

*First*:     That the defendant and at least one other person agreed to commit the crime of illegal remunerations, as charged in the First Superseding Indictment;

*Second*:   That the defendant knew the unlawful purpose of the agreement and joined in it willfully, that is, with the intent to further the unlawful purpose; and

*Third*:    That at least one of the conspirators during the existence of the conspiracy knowingly committed at least one of the overt acts described in the indictment,

United States' Opposition to Defendant Steven Donofrio's
Motion for Judgment of Acquittal – Page 3

>in order to accomplish some object or purpose of the conspiracy.

*See Pattern Jury Instruction, Criminal Cases*, U.S. Fifth Circuit, District Judge Association, No. 2.15A (2019). The overt act need not be of a criminal nature so long as it is done in furtherance of the conspiracy. *Id.* One may become a member of a conspiracy without knowing all the details of the unlawful scheme or the identities of all the other alleged conspirators. *Id.* If a defendant understands the unlawful nature of a plan or scheme and knowingly and intentionally joins in that plan or scheme on one occasion, that is sufficient to convict him for conspiracy even though the defendant had not participated before and even though the defendant played only a minor part. *Id.* The government does not need to prove that the alleged conspirators entered into any formal agreement, or that they directly stated between themselves all the details of the scheme. *Id.* Likewise, the government does not need to prove that all of the details of the scheme alleged in the indictment were actually agreed upon or carried out. *Id.* Nor must it prove that all of the persons alleged to have been members of the conspiracy were such, or that the alleged conspirators actually succeeded in accomplishing their unlawful objectives. *Id.*

### C. Illegal Remunerations

Title 42 United States Code, Sections 1320a-7b(b)(1)(A) and 1320a-7b(b)(1)(B), make it a crime for anyone to knowingly and willfully solicit or receive kickbacks, bribes, or illegal remuneration in return for a referral for services or in return for arranging for the furnishing or recommending the ordering of items or services under a Federal health care program. The elements of 42 U.S.C. §§ 1320a-7b(b)(1)(A) and 1320a-7b(b)(1)(B) are as follows:

> *First*: That the defendant solicited or received remuneration, including any kickback, bribe, or rebate;

|          |                                                                                                                                                                                                                                                  |
|----------|--------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
| *Second*: | That the remuneration was solicited or received in return for referring an individual to Vantari for the furnishing or arranging for the furnishing of any item or service, or for arranging for or recommending the ordering of an item or service; |
| *Third*:  | That the item or service was one for which payment was or might be made, in whole or in part, under a Federal health care program; and                                                                                                          |
| *Fourth*: | That the defendant acted knowingly and willfully when soliciting or receiving the remuneration.                                                                                                                                                  |

*See Pattern Jury Instruction, Criminal Cases*, U.S. Fifth Circuit, District Judge Association, No. 2.109A (2019); *see also* 42 U.S.C. § 1320a-7b(b)(1)(B).

Title 42 United States Code, Sections 1320a-7b(b)(2)(A) and 1320a-7b(b)(2)(B), make it a crime for anyone to knowingly and willfully pay or offer to pay kickbacks, bribes, or illegal remuneration to induce another person to make a referral for services or to induce another person to arrange for or recommend the ordering of items or services under a Federal health care program.  The elements of 42 U.S.C. §§ 1320a-7b(b)(2)(A) and 1320a-7b(b)(2)(B) are as follows:

|          |                                                                                                                                                                                                                                                                                             |
|----------|---------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
| *First:*  | That the defendant paid or offered to pay any remuneration, including any kickback, bribe, or rebate;                                                                                                                                                                                      |
| *Second*: | That the defendant did so to induce another person to refer an individual to Vantari for the furnishing or arranging for the furnishing of any item or service, or to arrange for or recommend the ordering of items or services;                                                         |
| *Third:*  | That the item or service was one for which payment was or might be made, in whole or in part, under a Federal health care program; and                                                                                                                                                     |
| *Fourth*: | That the defendant acted knowingly and willfully when paying or offering to pay the remuneration.                                                                                                                                                                                           |

*See Pattern Jury Instruction, Criminal Cases*, U.S. Fifth Circuit, District Judge Association, No. 2.109B (2019); *see also* 42 U.S.C. § 1320a-7b(b)(2)(B).

Remuneration may be solicited or received directly or indirectly, overtly or covertly—that is, secretly. *Id*. Remuneration may be in cash or in kind. *Id*. In order to meet its burden, the government does not need to prove that the defendant's only purpose or his primary purpose was to solicit or receive remuneration in return for a referral or in return for arranging for the furnishing or recommending the ordering of an item or service. *Id*. The government only needs to show that the solicitation was made or remuneration was received in part for that purpose. *Id*.

The Anti-Kickback Statute applies to any individual, and there is no requirement that a payment be received by a "relevant decisionmaker" or that a payment be made to corruptly influence a health care provider—all that is required is that there be intent to induce referrals, or to arrange for or recommend the ordering of Medicare business. *See United States v. Shoemaker*, 746 F.3d 614, 629 (5th Cir. 2014). As the Fifth Circuit has clarified, the focus is "on intent not titles or formal authority," and the Anti-Kickback Statute broadens liability to "reach operatives who leverage fluid, informal power and influence." *Id*.

### D. Trial Evidence

Evidence must be viewed in the light most favorable to the government, and all credibility choices, evidentiary conflicts, and reasonable inferences must be resolved in favor of the prosecution. If the government's view of the evidence fits anywhere within the wide realm of rationality, ***it must be accepted***. *See United States v. Hernandez-Palacios*, 838 F.2d 1346, 1348 (5th Cir. 1988) (court must "give the government the benefit of all reasonable inferences and credibility choices"). As set out in the following paragraphs, there is substantial direct and circumstantial evidence in the record supporting the possible jury conclusion that Donofrio

knowingly and willfully conspired to commit illegal remunerations.  Considering the totality of the government's evidence, the Court should deny Donofrio's Motion.

1. Donofrio Agreed to Commit Crime of Illegal Remunerations

The jury could infer from the evidence presented that Donofrio agreed with Nicholas Arroyo, Sean Parrish, Vantari, Codon, KNM Global, and others to unlawfully enrich themselves by paying and receiving kickbacks in exchange for the referral of and arranging for, and ordering and recommending the ordering, of Medicare business, to conceal the kickback arrangement, and to use the kickbacks and the proceeds of the kickback arrangement for their personal benefit.

The United States provided evidence in the form of incorporation documents reflecting Donofrio's role in Genematrix, LLC ("Genematrix"), GX3, 6–7; contracts between Genematrix and Vantari, GX16–18; a contract between Genematrix and Codon DX Services, LP ("Codon"), DX16; and Vantari commission statements reflecting the health care business procured by Genematrix and the corresponding Vantari payments to Genematrix, GX126A–M; and Vantari Medicare claims data for the period of 2014 to 2016, GX103A–C.  Together, this evidence consists of both direct and circumstantial evidence of Donofrio's illicit arrangement.  The jury also considered the testimony of Nicholas Arroyo, Sean Parrish, and Philip Lamb, each of whom testified that Donofrio agreed to receive kickbacks in exchange for the referral of and arranging for, and ordering and recommending the ordering, of Medicare business.  Nicholas Arroyo and Sean Parrish further testified that Donofrio paid them kickbacks, through Codon, in exchange for arranging for the ordering of Medicare business.  This testimony was corroborated by Special Agent Jason Rennie's ("SA Rennie") testimony regarding his analysis of the financial transactions involving Genematrix.  SA Rennie also sponsored bank records and summary exhibits reflecting the transactions between the parties.  GX50–51. 53–54, 56, 74.

2. <u>Donofrio Knew of the Unlawful Purpose of the Agreement and Joined in it Willfully</u>

The jury could determine that Donofrio knew the unlawful purpose of the agreement and joined in it willfully with the intent to further the unlawful purpose.  "Knowingly" means that the act was done voluntarily and intentionally, not because of mistake or accident.  *Pattern Jury Instruction, Criminal Cases*, U.S. Fifth Circuit, District Judge Association, Nos. 1.41 (2019).  Willfulness in the Anti-Kickback Statute context means that the act was committed voluntarily and purposely with the specific intent to do something the law forbids; that is to say, with bad purpose either to disobey or disregard the law.  *United States v. Ricard*, 922 F.3d 639, 647–48 (5th Cir. 2019).  Under this definition of willfulness, knowledge that the conduct is unlawful is all that the government is required to prove.  *See Ricard*, 922 F.3d at 647–48; *Bryan v. United States*, 524 U.S. 184, 196 (1998); *United States v. St. Junius*, 739 F.3d 193, 210 (5th Cir. 2013); *see also Pattern Jury Instruction, Criminal Cases*, U.S. Fifth Circuit, District Judge Association, No. 1.43 (2019).  A person need not have actual knowledge of the Anti-Kickback Statute or specific intent to commit a violation of the statute.  *Id*.

The United States provided evidence that Donofrio knew he was receiving payment of a percentage of sales commissions for Vantari referrals.  The United States provided contracts signed by Donofrio, personally, as well as by Genematrix, GX16–18; as well as e-mail communications Donofrio authored or received detailing the payments for Medicare business, GX302–306, 507.  Arroyo, Sean Parrish, Raj Desai, JJ Rudy, and Aman Rangan all testified that Donofrio was aware that Vantari was paying him, through Genematrix, for arranging for Medicare business.

The United States also provided evidence that Donofrio received notice that payment of a percentage of sales commissions to contract sales personnel implicated the Anti-Kickback

Statute and was unlawful.  GX29A–I.  Arroyo and Lamb each testified that they communicated to Donofrio their understanding that paying a percentage of sales commissions for Medicare business would violate the Anti-Kickback Statute.  Specifically, Lamb testified that he personally met with Donofrio and was very clear in communicating to him that Vantari's regulatory counsel had advised Vantari that it needed to adopt a different compensation model in order to comply with the law.  These communications were corroborated by contemporaneous e-mail communications; such as GX205A-C, 255, 259, 260, reflecting Arroyo informing Donofrio about why Vantari was changing its compensation model, Donofrio agreeing to attend a meeting on the subject, and the meeting being held.

Moreover, the jury was free to infer from Donofrio's suspicious conduct, misrepresentations, and concealment that he knew his conduct was unlawful.  *See United States v. Ricard*, 922 F.3d 639, 648 (5th Cir. 2019).  The United States provided evidence that Genematrix engaged in a contractual arrangement with Vantari under which Genematrix could be surreptitiously paid by Vantari for the furnishing or arranging for the furnishing of, or for arranging for or recommending the ordering of, Medicare business.  The United States provided many examples of misrepresentations of the parties' actual agreement, including the contracts themselves.  GX18, the activity-based compensation contract between Vantari and Genematrix, includes numerous misrepresentations regarding the activity-based compensation.  *Id*.  The contract states that Genematrix would be paid for active contractor representatives that performed sales and marketing activities for Vantari, that the compensation was determined in arm's length-bargaining and consistent with fair market value, that the compensation was not determined in a manner that takes into account volume or value of Medicare referrals, and that Genematrix and its employees or subcontractors would not receive compensation for any

**United States' Opposition to Defendant Steven Donofrio's**
**Motion for Judgment of Acquittal – Page 9**

services reimbursed by Medicare. *Id.* Sean Parrish, Arroyo, Rudy, Desai, and Rangan all testified that Donofrio was aware that despite the misrepresentations in the contract, Vantari was paying Genematrix for Medicare business. This was corroborated by GX306, 316, 343–345, which consist of e-mail communications and spreadsheets regarding Genematrix's commissions and purported activity. The United States also provided evidence of a sham $75,000 bonus payment, GX507.

Further, the United States provided significant evidence that Donofrio played an integral role in concealing the illegal kickbacks as compensation for active representatives. The United States showed that Donofrio requested information and was kept apprised of the Medicare revenue Vantari was crediting to Genematrix, GX302–04, 306, 332; used that information to calculate and confirm how many active representatives would be needed to match the compensation owed under both compensation models, GX304–305, 332, 335, 339–41, 506; and submitted the corresponding fictitious documentation that Vantari and Genematrix could use to conceal their unlawful conduct, GX329–330, 333.

Together, the evidence and testimony allowed the jury to infer rationally that Donofrio knowingly and willfully participated in an arrangement to disregard the law and continue to be paid for the furnishing or arranging for the furnishing of, or for arranging for or recommending the ordering of, Medicare business. The evidence showed that despite the misrepresentations to the contrary, Donofrio was aware of what Genematrix was owed under the previous compensation model he knew to be unlawful, and he cooperated with Vantari by providing inaccurate and falsified information to support and conceal the parties' illegal conduct.

Additionally, the United States provided evidence and elicited testimony regarding Donofrio's knowledge and willfulness pertaining to arrangements with Codon. Arroyo and

Parrish testified that Codon was a vehicle used to embezzle income and divert business away from Vantari's other partners, Lamb and Shaun Opie.  There was also testimony from Arroyo and Brian Parrish and other evidence that Donofrio received kickbacks from Arroyo and Parrish, through Codon, for Vantari lab samples that were diverted to another lab after having requisition forms altered.  GX314–15, 322, 324–26, 328, 334, 336, 338, 409.

### 3. Donofrio and Other Conspirators Committed Numerous Overt Acts

Donofrio and his co-conspirators committed numerous overt acts in furtherance of the conspiracy to commit illegal remunerations.  As previously discussed, an overt act need not be of a criminal nature so long as it is done in furtherance of the conspiracy.

The evidence showed that Donofrio himself committed numerous overt acts in furtherance of the conspiracy.  Donofrio personally executed contracts, GX16, and utilized some of those contracts to conceal Vantari and Genematrix conduct, GX17–18.  Donofrio created and submitted falsified, inconsistent activity reports, GX329–30, 333.  Donofrio, through Genematrix, arranged for the furnishing and recommended the ordering of items or services paid for by Medicare.  GX126A–M (Vantari commission statements reflecting the health care business procured by Genematrix and the corresponding Vantari payments to Genematrix); GX103A–C (Vantari Medicare claims data for the period of 2014 to 2016).

There was also overwhelming evidence for the jury to consider regarding overt acts undertaken by Arroyo, Parrish, and Vantari in furtherance of the conspiracy.  Arroyo and Parrish admitted in their testimony to paying Donofrio in exchange for the referral of and arranging for, and ordering and recommending the ordering, of Medicare business.  Specifically, Arroyo and Parrish testified that they paid Donofrio because of his and his agents' ability to leverage their informal access, power, and influence over referring providers.  Arroyo and Parrish testified that

**United States' Opposition to Defendant Steven Donofrio's**
**Motion for Judgment of Acquittal – Page 11**

they concealed the true nature of the arrangement through the activity-based compensation model and through sham bonus payments, and they did so knowingly and willfully. These payments and Medicare claims discussed above corroborate this testimony and conclusively prove that the overt acts occurred.

Furthermore, the United States provided evidence, as well as testimony from Arroyo, Parrish, and Virginia Blake Herrin regarding overt acts that were committed in the Eastern District of Texas. This evidence includes contracts executed between Vantari and UMT and VBH, entities operated by Tim Armstrong and Virginia Blake Herrin. GX19–22. Armstrong and Blake Herrin are residents of Collin County, within the Eastern District of Texas. In her testimony, Blake Herrin admitted to falsifying activity reports and testified regarding UMT's practice of providing kickbacks to health care providers in exchange for Vantari referrals. The United States also provided evidence of payments made by Vantari to VBH in furtherance of the conspiracy within the Eastern District of Texas. GX83. There was substantial evidence in the record proving that overt acts were committed in furtherance of the conspiracy to commit illegal remunerations.

### E. Donofrio Requests that the Court Interpret Evidence in Donofrio's Favor

Donofrio misapplies the Rule 29 standard and improperly asks the Court to consider his interpretation of the evidence and testimony. Specifically, Donofrio renews his flawed argument regarding supposed reliance on advice of counsel and treats his tenuous argument as if it were established.

Donofrio did not show that he relied on Clay Patterson's legal advice. He cannot do so. To establish a reliance on advice of counsel defense, Donofrio must prove that

> (1) before taking action, he in good faith sought the advice of an attorney whom he considered competent to advise him on the matter; and
> (2) he consulted this attorney for the purpose of securing advice on the lawfulness of his possible future conduct; and
> (3) he made a full and accurate report to his attorney of all material facts that he knew; and
> (4) he then acted strictly in accordance with the advice of this attorney.

*See Pattern Jury Instruction, Criminal Cases*, U.S. Seventh Circuit, District Judge Association, No. 6.12 (2018).  Donofrio did not prove that he sought Clay Patterson's advice, that he consulted Patterson for the purpose of securing advice on the lawfulness of possible future conduct, that he made a full and accurate report to Patterson of all material facts, or that he acted in strict accordance with Patterson's advice.

Donofrio cannot even establish that Clay Patterson represented him or provided him with legal advice in his individual capacity.  *See United States v. Graf*, 610 F.3d 1148, 1159–60 (9th Cir. 2010) (applying *Bevill* joint representation factors).  In fact, Donofrio testified that he was aware that Clay Patterson had made representations to this Court that Donofrio never sought legal advice from him in his individual capacity.  Affidavit of Clay Patterson, Exhibit 1, ECF No. 485.

Moreover, the United States provided evidence that Clay Patterson was not providing legal advice but instead was providing business advice.  In fact, at times Patterson worked with Donofrio to further the conspiracy.  For example, in GX356, Clay Patterson advised Donofrio that the Vantari agreement based on percentage of commissions failed to include "necessary compliance language for AKS/Stark," and contained "multiple provisions that are in direct contradiction of Medicare Regulations."  Patterson wrote, "strictly from a legal prospective [sic], I strongly recommend against signing the Agreement for the reasons set forth above.  However,

**United States' Opposition to Defendant Steven Donofrio's
Motion for Judgment of Acquittal – Page 13**

from a business prospective [sic], I understand the need to enter into the Agreement . . . ." GX356. In GX357, Donofrio wrote that he agreed with everything Patterson stated, but that "[t]he problem is we [Genematrix] are a ship without a port right now." Donofrio subsequently communicated to Arroyo that he "made it clear to [Patterson] to stress business over legal." GX352. In addition, the United States provided evidence that under Donofrio's direction, Patterson negotiated the contract between Vantari and Genematrix, including the provisions regarding activity-based compensation and prohibitions on compensation for Medicare business, GX353; but nevertheless, Patterson and Donofrio both worked to circumvent the contract through fictitious activity-based compensation, GX354. Taken together, the jury was free to infer that Donofrio neither sought Patterson's advice in good faith nor follow Patterson's legal advice. The jury was also free to infer that Patterson was an interested party who often provided business advice rather than legal advice. Instead, the jury could reasonably conclude that Donofrio did not seek advice in good faith from a disinterested, competent attorney and was ultimately unconcerned with receiving valid legal advice or complying with the law.

### F. Single Conspiracy

Donofrio uses another pleading to recycle his multiple conspiracy argument. The United States has addressed this issue in prior pleadings, and rests on the argument made in its Response in Opposition to Defendant Philip Lamb's Motion to Dismiss. *See* ECF No. 326. Namely, in the duplicity context, the "principal considerations in counting the number of conspiracies are (1) the existence of a common goal; (2) the nature of the scheme; and (3) the overlapping of the participants in the various dealings." *Barrera*, 444 F. App'x at 24 (quotation omitted). Likewise, in the duplicity context as in the joinder context, a conspiracy count need not charge a defendant "with active participation in each phase of the conspiracy," and it need not allege that he "knew

all the participants or details of the conspiracy," "as long as it alleges knowledge of the conspiracy's essential nature." *United States v. Acosta*, 763 F.2d 671, 696 (5th Cir. 1985) (quotation omitted).  Here, the United States argued and Arroyo testified that Vantari and its distributors and their principals, including Donofrio, shared the common goal of unlawfully enriching themselves through a kickback arrangement, each conspirator depended on and benefited from the others' activities in keeping Vantari solvent and economically viable, the conspirators respected existing distributor/doctor relationships, and the conspirators overlapped, sharing common techniques and benefitting from them, including maintaining records regarding distributor-by-distributor records of referrals.  And again, as described above, the United States provided significant evidence regarding acts in furtherance of this conspiracy occurring within the Eastern District of Texas.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendant Steven Donofrio's Motion for Judgment of Acquittal.

Respectfully submitted,

BRIT FEATHERSTON
UNITED STATES ATTORNEY

  /s/ *Adrian Garcia*
ADRIAN GARCIA
Assistant United States Attorney
Texas State Bar No. 24084522
101 East Park Blvd., Suite 500
Plano, Texas 75074
(972) 509-1201
Adrian.Garcia@usdoj.gov

NATHANIEL C. KUMMERFELD
Assistant United States Attorney
Texas State Bar No. 24060122
110 N. College, Ste. 700

**United States' Opposition to Defendant Steven Donofrio's**
**Motion for Judgment of Acquittal – Page 15**

Tyler, TX 75702
(903) 590-1400
(903) 590-1439 (fax)
Nathaniel.Kummerfeld@usdoj.gov

LUCAS MACHICEK
Assistant United States Attorney
Texas Bar No. 24064230
110 N. College, Suite 700
Tyler, TX 75702
(903) 590-1400
(903) 590-1439 (fax)
Lucas.Machicek@usdoj.gov

## CERTIFICATE OF SERVICE

This is to certify that on February 4, 2021, this document was filed with the Clerk using the CM/ECF filing system, which will cause a copy of the document to be delivered to all counsel of record via electronic mail.

                                                   /s/ *Adrian Garcia*
                                              ADRIAN GARCIA